## DOTY v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4033.

Circuit Court of Appeals, First Circuit.

April 4, 1945.

Frank J. Albus, of Washington, D. C., for petitioner for review.

Helen Goodner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and J. P. Wenchel, Chief Counsel, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of

counsel), for Commissioner of Internal Revenue.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This is a petition for review of a decision of the Tax Court sustaining the Commissioner's determination of a deficiency in the petitioner's income tax for the year 1940. The question presented is whether ordinary dividends on stock held in trust are income which under the trust instrument was currently distributable and thus taxable to the beneficiary under § 162(b) of the Internal Revenue code,[1] or whether the dividends are "accretions to the trust property" which the trustee had discretion to treat as principal or income, and thus taxable to the trust under § 161[2] as the dividends were not distributed.

The facts material to the issue before this court may be summarized as follows: On May 21, 1939, Aroline C. Gove died testate. By her will duly admitted to probate in the County of Essex, Massachusetts, she set up three trusts. To Trust B, with which we are concerned here, the testatrix gave one-half of her shares of the capital stock of the Lydia E. Pinkham Medicine Company and of the Northeastern Advertising Agency, Inc., in trust for the benefit of her daughter, Caroline Doty, the petitioner herein. Paragraph Fourth which sets up this trust provides in sub-section A that "The income of Trust B is to be paid at least quarterly to said Caroline Doty during her lifetime." This paragraph further created remaindermen's interests in her three sons, the testatrix's grandsons.

By paragraph Thirteenth of the will the trustees of the three trusts were given broad powers in dealing with the trust property. This paragraph provided in part:

"They (the trustees) shall have full power and authority to determine in all cases what *accretions to the Trust property* shall be considered as income and what as principal, and what expenses shall be charged to income and to principal respectively, and especially, without restricting the generality of the foregoing powers, to determine in case of the receipt by them of any securities, money, or other property, either by way of a stock dividend, extra dividend, or upon a reorganization or in liquidation of a corporation or organization, what portion, if any, of such securities money or property shall be considered as income and what as principal, and they may decide whether or not any amortization shall be made for bonds bought at a premium or for what are ordinarily considered as wasting investments, *all without regard to the general rule of law on the subject * * *"

"Notwithstanding the provisions of any of the foregoing Trusts, the Trustee or

---

[1] 26 U.S.C.A.Int.Rev.Code, § 162:

"Sec. 162. Net income.

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

* * * * * *

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

"(c) * * * in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary."

[2] 26 U.S.C.A.Int.Rev.Code, § 161(a):

"(a) Application of tax. The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

* * * * * *

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

* * * * * *

"(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated."

Trustees may in their discretion expend and apply the whole or such part of the income or principal of any Trust established by this will as they deem proper for the support and maintenance and education of the persons beneficially provided for in the respective Trusts, provided, however, that any such advances made by the Trustee or Trustees shall be charged against the interest of the beneficiary for whose support, maintenance, and education and comfort it has been applied."

Lydia P. Gove, a sister of the petitioner, was named in the will as executrix and trustee of Trust B and served throughout 1940 in these capacities. During that year dividends in the amount of $7,901.78 were received by Trust B. This was the only income of that trust in 1940.

The trustee, exercising what she regarded as her proper discretion under paragraph Thirteenth, determined that the amount of $7,901.78 was an accretion to the trust property, which the trustee was empowered to treat as principal, and that as principal it was not distributable to the beneficiary as "income" under paragraph Fourth of the will. In her fiduciary's income tax return for 1940 she reported the $7,901.78 as trust income not distributed and paid an income tax thereon. No portion of the fund has ever been paid or credited to the petitioner.

The petitioner in her 1940 return relied on the trustee's action and did not report the amount of dividends received by Trust B. The Commissioner included the amount ($7,901.78) and determined a deficiency.

Faced with the provision of the fourth paragraph directing that the income be distributed quarterly to the beneficiary for life and the provision of the thirteenth paragraph empowering the trustee, in her discretion, to determine whether accretions to the trust property shall be treated as income or as principal, the Tax Court found an apparent ambiguity which it resolved by construing the testatrix's intent. It pointed out that the word "accretions" as used here has no clearly defined meaning; that there are no cases holding that it includes ordinary cash dividends on corporate stock, and that it could think of no reason for supposing that the testatrix intended the word to have such a meaning. Therefore the court decided that the testatrix recognized a difference between indisputable income, such as ordinary cash dividends or interest, which paragraph Fourth provides explicitly is to be distributed quarterly, and "accretions," such as stock dividends, extra dividends, profits from sales, and reorganization and liquidation distributions, which are doubtful receipts so far as their classification as income or principal is concerned. The fact that the trustee did classify the dividends as principal and the fact that the beneficiary failed to demand them did not establish a correct use of power. The Tax Court was of the opinion that equity would force the trustee to account for her failure to distribute clear income and held that the dividends received by the trust in 1940 were income to be distributed currently within the coverage of § 161(a) (2), and not income which, in the discretion of the trustee, might be distributed or accumulated within the coverage of § 161(a) (4), and that they were properly included within the gross income of the petitioner under § 162(b).

██ Before this court the petitioner takes the position that this is not a case where the income is currently distributable and taxable to the beneficiary, rather than to the trust. She contends that the provisions of the fourth paragraph of the will are not to be applied until after the provisions of the thirteenth paragraph and a determination made as to what receipts of the trust are to be allocated to income and what to principal, because, until that is done and the trustee makes allocations of receipts to income, there is no "income" to which the provisions of the fourth paragraph providing for its distribution apply.[3] We do not agree.

██ There is no question but that Massachusetts law applies here and that the purpose of our inquiry must be to determine what the intention of the testatrix was in the paragraphs in question. Her intention "is the 'controlling consider-

[3] The petitioner suggests that the Commissioner confused the word "income" as used in this paragraph with the meaning of the word as used in §§ 161 and 162 of the Internal Revenue Code; that "income" as there used means merely that if a trust receives income, as distinguished from capital, such income is taxable to some one; and that though the trustee allocated the trust income to principal she did return such receipts as income to the trust.

ation' in determining the rights as between the life tenants and remaindermen. (Cases cited.) And in making this determination, we must be guided by the well known principle of law that the whole instrument is to be considered, aided by the surrounding circumstances, due weight being given to all its language, with some meaning being given, if possible, to all parts, expressions and words used, discarding and disregarding no parts as meaningless, if any meaning can be given them consistently with the rest of the instrument. (Cases cited.) Effect is to be given to the intent so ascertained unless some positive rule of law prevents." Dumaine v. Dumaine, 301 Mass. 214, 16 N.E. 2d 625, 627, 118 A.L.R. 834.

An examination of the entire instrument discloses that the testatrix had two dominant purposes in mind. One was to provide for her daughter, Caroline Doty, the nearest and most natural object of her bounty not already provided for. It appears from the will that the testatrix while alive had amply provided for her other surviving daughter and her deceased son and his children. Trust B gave Caroline Doty the right to substantially one-half the income of the estate for life. The testatrix's second purpose was to provide for her grandchildren. Caroline Doty's children had remaindermen's interests in Trust B. Trust A provided for the children of the testatrix's other daughter, Mary Pittman, and Trust C, while directing that fixed sums of money be paid to named beneficiaries for life,[4] provided that the unexpended income and principal were to be divided equally and disposed of according to the principles governing the other two trusts. The unequivocal language of Trust B providing for the payment of income quarterly contrasts with the provisions of the other trusts providing for the accumulation of income and the payment of specific bequests out of income. It will also be noted that the disputed thirteenth paragraph provides that the trustee, in her discretion, may spend both income and principal "for the support and maintenance and education of the persons beneficially provided for." It seems clear that the testatrix intended all three trusts to receive income each year.

That being the expressed intent as to income it is controlling when we come to the proper construction of "accretions to the trust property" in the thirteenth paragraph of the will. To construe "accretions" so as to include all receipts of the trust would give the trustee power to treat all income as principal and prevent the distribution of any income to the beneficiary, not only in the tax year but all subsequent years, and this is clearly contrary to the testatrix's intent. Therefore, in using the word "accretions" she must have meant receipts other than those ordinarily considered as income. While the trustee's discretion with "accretions" is specifically general the testatrix suggests the limitations of the class to which that general discretion is confined by enumerating stock dividends, extra dividends, reorganization and liquidation distributions, and questions of amortization, depreciation, or depletion. Had she intended the trustee's discretion to extend to all trust receipts she could have said so in that many words and used the word "receipts" rather than the words "accretions to trust property," which tend to have a special meaning in Massachusetts law.[5]

But even if we assume arguendo that the testatrix intended to give the trus-

---

[4] $2000 a year to Eliza H. Gove, sister of the testatrix's deceased husband; $50 a month each to Mary Page and Fannie Page. The balance of the income of this trust is split between Trusts A and B and governed by the provisions of the latter trusts.

[5] The Commissioner contends that in Massachusetts the distinction between income and "accretions to the trust property" is well recognized and cites Minot v. Paine, 99 Mass. 101, 112, 96 Am.Dec. 705. In that case the Supreme Judicial Court laid down the Massachusetts rule since followed that dividends payable in cash are to be classified as income and dividends payable in stock are to be classified as capital. Of the trust beneficiary the court said, "as to him, a stock dividend is an accretion to his capital." Cf. Dumaine v. Dumaine, supra, 301 Mass. at page 217, 16 N.E.2d at page 627, 118 A.L.R. 834. In Revloc Supply Co. v. Troxell, 281 Pa. 424, 126 A. 774, cited by the Tax Court and the Commissioner, the court construed the term "accretions" as used in a sales contract for shares of stock. By the contract an employee purchased stock at par in his employer's company and agreed to sell back the stock at such time when he might cease to be an employee. The

tee an absolute discretion in the allocation of trust receipts to corpus or to income, that discretion is not completely uncurbed. It must be exercised reasonably and in good faith in the interest of beneficiaries and remaindermen and must not be abused or exercised arbitrarily. Mayberry v. Carey, 268 Mass. 255, 167 N.E. 281; Dumaine v. Dumaine, supra; Sears v. Childs, 309 Mass. 337, 35 N.E.2d 663. The action of the trustee here in classifying ordinary dividends as corpus deprives the beneficiary of all income from the trust. In the absence of most unusual circumstances—and none appear here—it seems clear that on the facts of this case equity would find such action on the part of the trustee arbitrary and an abuse of discretion.

The fallacy in the petitioner's position, in our opinion, lies in a misconception concerning the function intended to be performed by trust terms empowering the trustee to determine what receipts should be treated as principal and what as income. The difficulties of a settlor of a trust in stating his intention so as to anticipate future contingencies are well known. Various factors affect property values and security returns, and the discretionary device allows for a readjustment of distributions between the conflicting interests of life beneficiaries and remaindermen which may conform more closely to the expressed purposes of the settlor.[6] Where such discretionary power is conferred the trustee will only be restrained for an abuse of discretion. There is little agreement among the different jurisdictions, however, on what constitutes an abuse of discretion. The fact that a trustee does not follow the local rules of construction in the allocation of trust receipts which would apply if he had no discretion will not constitute an abuse of discretion where the courts take the view that the discretion conferred is intended to enable the trustee to ignore such rules. Dumaine v. Dumaine, supra; Sears v. Childs, supra; Chase National Bank v. Chicago Title & Trust Co., 246 App.Div. 201, 284 N.Y.S. 472, affirmed 271 N.Y. 602, 659, 3 N.E.2d 205; White v. Rose, 5 Cir., 1934, 73 F.2d 236; Colt v. Duggan, D.C., 1938, 25 F.Supp. 268; Rutledge, J., dissenting in American Security & Trust Co. v. Frost, 73 App.D.C. 75, 117 F.2d 283, 287, certiorari denied, 1941, 312 U.S. 707, 61 S.Ct. 829, 85 L.Ed. 1139; Commissioner of Internal Revenue v. O'Keefe, 1 Cir., 1941, 118 F.2d 639; 50 Y.L.J. 1461; 52 H.L.R. 1369; 26 Iowa L.R. 900; 25 Va.L.R. 242; Restatement of Trusts § 233; Scott on Trusts § 233.5. For the view that the exercise of the trustee's discretion extends only to cases of "honest doubt" and that there can be no "honest doubt" where the local rule is settled, see Matter of Talbot's Estate, 1939, 170 Misc. 138, 9 N.Y.S.2d 806; Commissioner of Internal Revenue v. Waterbury, 2 Cir., 1938, 97 F.2d 383, certiorari denied 305 U.S. 638, 59 S.Ct. 105, four cases, 83 L.Ed. 411; American Security & Trust Co. v. Frost, supra.

In Dumaine v. Dumaine, supra, the Supreme Judicial Court held that the failure of the trustee to follow the rules which would apply if he had no discretionary

controversy arose over whether the resale price of the stock was its par value or its book value at the termination of the employment, and the court was asked to construe the provision of the contract providing that the purchaser was "to have and receive all the income, dividends, and accretions thereof." The trial court construed the word "accretions" as used in relation to stock as indicating net company earnings and said that the word "means additions to the assets of the company by way of net earnings or natural increase from the business of the company." The Supreme Court affirmed the judgment below, accepted the construction of "accretions" as meaning "something in addition to dividends" and said that it embraced the surplus earnings of the corporation.

Whether the term "accretions" as used in relation to dividends is an inclusive one—dividends plus something—or whether the two terms are mutually exclusive raises a question that may be resolved differently under varying circumstances and fact situations. Therefore in the present case we are on safer ground in resting our construction of the term "accretions" primarily on the testatrix's intent as gathered from the whole instrument.

[6] For some of the complexities encountered by trustees in the allocation of trust receipts, see Scott on Trusts, §§ 232–237; Bogert, Trusts and Trustees, §§ 841–853; I Restatement, Trusts, §§ 232–240; Reeves, Apportionment: A Plea for a Uniform Rule, 14 Temple L. W. 195; Brigham, Pennsylvania Rules Governing the Allocation of Receipts Derived by Trustees from Shares of Stock, 85 U. of Pa.L.R. 358.

508

power does not constitute an abuse of discretion. The question in that case was whether the trustee could distribute as income a profit made on the sale of stock in the face of the local rule of construction that gains from the purchase and sale of securities were accretions belonging to principal. Despite the fact that the trustee was one of the two life beneficiaries and the fact that the local rule of allocation was well settled, the court held that the trustee had the power to classify the gain as income and distribute it to himself as beneficiary. The clause in question provided that the trustee should have "full power and discretion to determine whether any money or other property received by him is principal or income without being answerable to any person for the manner in which he shall exercise this discretion." The court noted that this power was not uncontrolled. It did not involve the power to destroy the trust, nor, on the other hand, was it limited to cases where there was a question of doubt or no rule of law to guide the determination. While the discretion conferred was "not an empty one" it conferred "an important responsibility to make a determination which, if honestly exercised, calls for no revision by the court. Am.Law Inst. Restatement: Trusts, § 187, 233."

The Dumaine case is to be distinguished from the instant one on several grounds: One, here the trustee's discretion extends to "accretions to the trust property," not to "any money or property received by him," and there is no provision that he shall not be answerable to any person for the manner in which he shall exercise his discretion. Two, the action of the trustee here in depriving the beneficiary of all income destroys one of the purposes of the trust, whereas, in the Dumaine case the trustee acted in such a way as to favor the interest of the beneficiary which accorded with the purpose of the trust. Three, here we are concerned with ordinary cash dividends, the only income of the trust, whereas in the Dumaine case the court was dealing with a capital gain as to which, though clearly capital by local law, there was a conflict among the different jurisdictions and was, therefore subject to reasonable doubt.[7]

To the extent that the Tax Court relied on American Security & Trust Co. v. Frost, supra, for the rule that the authority to classify is limited to cases of "honest doubt" it was in error. The question in that case was whether the settlor intended to bind her trustees by the local rules of construction concerning stock dividends and administration income. They were empowered "to decide finally any question that may arise as to what constituted income and what principal—it being my wish, however, that whenever feasible their decision be in favor of the life beneficiaries." While the local law as to stock dividends was well settled the law with respect to administration income became established only after the trustees instituted their action for construction of the will setting up the trust. The court held that since the local rules of construction had been fixed by judicial decisions, the trustees were bound by them and were "not authorized to assume a doubt where there is none and thus to declare something to be income which under judicial decisions is principal."

We hold that the ordinary dividends received by the trust in the tax year were income to be distributed currently under § 161(a) (2) and that they were properly included within the gross income of the petitioner herein under § 162(b).

The decision of the Tax Court is affirmed.

---

[7] As Rutledge, J., dissenting in American Security & Trust Co. v. Frost, supra, 73 App.D.C. at page 83, 117 F.2d at page 291, footnote 14, points out, "In the absence of specific enumeration in the will some things are and always have been so clearly corpus or income that no course of litigation has been needed to establish presumptive rules concerning them. On the other hand, other assets, including stock dividends, 'administration income,' and gains made on the sale of securities, have required long courses of litigation to establish their presumptive character, often with diverse results in different jurisdictions. Possibly the line could be drawn reasonably between these two groups of assets, if it were necessary to hold that what may be called basic corpus could not be distributed as income, though that which by adjudication has become presumptively such could be."