**WILLCUTS, Collector of Internal Revenue, v. DOUGLAS. ***

No. 9938.

Circuit Court of Appeals, Eighth Circuit.

Sept. 10, 1934.

Rehearing Denied Oct. 22, 1934.

*Writ of certiorari denied 55 S. Ct. 346, 79 L. Ed. ——.

Milford S. Zimmerman, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for appellant.

Leland W. Scott, of Minneapolis, Minn. (Junell, Driscoll, Fletcher, Dorsey & Barker, of Minneapolis, Minn., on the brief), for appellee.

Before STONE, Circuit Judge, and BELL, District Judge.

STONE, Circuit Judge.

This is an appeal by the collector from a judgment according refund of income taxes.

On the 15th of September, 1923, a decree of divorce was entered in favor of Ida M. Douglas, wife of Edward Bruce Douglas, appellee. Three days prior thereto, the above parties and the Minneapolis Trust Company entered into a trust agreement whereby appellee deposited certain securities of par or estimated value of $300,000 with the trust company as trustee, and further provided for the delivery to the trustee, on November 6, 1927, of further property to be received from his father's estate. The trustee was given full power of control, reinvestment, and change of the securities in the trust fund, "subject, however, to the consent and approval" of appellee and the further right in appellee to designate and determine investments subject to the approval of the trustee (acting in that respect for the wife as to the reasonable safety and adequate income producing nature of the securities). The declared purposes of the trust were to pay to the wife during her life, from the income of the trust estate, $15,000 annually from September 1, 1923, to November 6, 1927, and thereafter $21,000 annually, with a provision that, in case the net income from the trust fund should not prove sufficient to make any of the above payments, the husband, upon request, should make good such deficiency, or, in default thereof, the deficiency should be made up from the principal of the trust fund. In case the net income from the trust fund should exceed the annual payments required, the trustee should pay such excess to the husband or his successors, subject to the right of the trustee to reserve therefrom reasonable amounts to fairly insure the prompt meeting of future payments to the wife. "Net income" is defined as meaning income from the trust fund exclusive of profits from sale of items in the fund and exclusive of stock dividends (these exceptions to become a part of the principal of the trust fund) and less income tax paid by the trustee. Power to change the trustee is reserved to the appellee and his successors. The trust is to terminate at the death of the wife and the principal of the trust fund then to revert to appellee or his successors. Another provision is as follows: "It is expressly agreed by and between the parties hereto, and more especially by the party of the second part, that the provisions herein made for her are in lieu of, and in full settlement of alimony, and of any and all dower rights or statutory interests in the estate of the party of the first part, and in lieu of any and all claims for separate maintenance and allowance for her support."

Besides dissolving the marriage, the decree of divorce provides: "It Is Further Adjudged and Decreed that the defendant provide and create the trust fund as set out in that certain agreement between said parties and the Minneapolis Trust Company as trustee now on file with said trustee, and that the plaintiff have the provision therein made in lieu of all other alimony or interest in the property or estate of the defendant and that neither party have any costs or disbursements herein."

In his individual income tax returns for the years 1927 and 1928, appellee omitted income realized by the trust estate and paid to the wife thereunder. A redetermination by the Commissioner resulted in the inclusion of this item in each of those years, and the tax thereon was paid under protest. Thereafter, proper demand for refund was made, and this action seasonably brought. With a small reduction in the tax for 1928, which reduction is not in question here, the court adjudged recovery of the tax paid on account of the inclusion of this item in the above two years. As the matter comes here, the only thing involved is the propriety of including such income from the trust estate in the personal income taxable to appellee.

One contention of the Commissioner is that the entire income from this trust is taxable to the creator thereof because, under

its terms, the trust estate is to revert to the creator after it has served the purpose of its creation and also the creator is entitled to the surplus annual income of the trust above the required payments to the wife. We do not see why either or both of these provisions should, of themselves, have such result; however, they may bear upon the main contention in this appeal, hereafter to be examined.

The bald fact that, after an irrevocable trust has served its purpose, the trust estate is to revert to the creator, does not, without more, make the income during the trust period that of the creator for tax or any purposes. The statute is aimed at taxation of income. It expressly recognizes trust estates as taxable entities and specifically points out the trustee or the beneficiary as the taxpayer for incomes from such estates. If the creator of the trust is beneficially entirely separated from that income under all allowable tax considerations, he is as though a total stranger thereto. The duration of the trust and the disposition of the corpus at the termination of the trust are, of themselves alone, usually quite immaterial. Also, it is unimportant, of itself, that the surplus income of a trust goes to the creator. If a well-disposed person desiring to assure the proper education of the child of a friend by providing an annual fund therefor of $1,-000 should create an irrevocable trust of $25,-000 with provisions that at the end of ten years the trust should terminate and the corpus return to him, and that during the trust any annual income above $1,000 should be paid by the trustee to him, it would require an inescapably clear expression of congressional intent to believe that a statute meant to tax, as income to the creator during the trust, anything beyond the actually accruing annual surplus income and, if such construction were compelled, the validity of such an imposition would be widely open to question.

The main and more serious contention of the Commissioner is that the creator of this trust is taxable for the income therefrom because that income is "used to pay a legal and adjudicated obligation which he owed, and in so doing conferred the benefit upon him." The argument is that the trust was created to provide an income in lieu of alimony or other interest in his estate, and was, by the court granting the divorce, specifically decreed in lieu thereof. Therefore it is said to follow that, since this trust was created to meet a personal and legal obligation

he was bound to fulfill, and since the income therefrom was devoted to that purpose, it was so used for his benefit as to constitute it his income.

In efforts to avoid income or estate taxes, various devices have come to the courts. From decisions thereon has evolved the general rule that, where the creator receives "the substance of enjoyment" (Burnet v. Wells, 289 U. S. 670, 677, 53 S. Ct. 761, 763, 77 L. Ed. 1439) of the income, it is regarded as his for taxation purposes. Instances where such enjoyment has been held to exist are contracts for assignments of income (Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731), assignments of future income (Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665), contracts for payment of obligations of the taxpayer by another (Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; United States v. Boston & Maine R. Co., 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929), and payment of premiums of insurance on the life of the taxpayer from income of a trust created by him which was revocable (Du Pont v. Commissioner, 289 U. S. 685, 53 S. Ct. 766, 77 L. Ed. 1447) or irrevocable (Burnet v. Wells, 289 U. S. 670, 53 S. Ct. 761, 77 L. Ed. 1439).

Among the devices employed to avoid income and estate taxes none has been more used than trusts dealing with members of a family, and the courts have been alert to prevent such avoidance by this means. The question here is whether this trust is of that character—irrespective of whether tax avoidance was an impelling motive or was not. In determining this, it is the effect upon, rather than the motive of, the creator in forming the trust. In the majority opinion in Burnet v. Wells, 289 U. S. 670, 53 S. Ct. 761, 77 L. Ed. 1439, the validity of a statutory requirement (section 219 (h), Revenue Acts of 1924 and 1926 [26 USCA § 960 note]) that insurance premiums on the life of the creator paid from the trust were taxable to him as income was upheld because there was recognized a benefit to the creator there from the performance of a pressing social duty and a usual manner of providing for dependents (page 681 of 289 U. S., 53 S. Ct. 761). The dissent was grounded on the view that the benefit to the creator must be "something more tangible than a purpose to perform a social duty, or the recognition of a moral claim as distinguished from a legal obligation" (page 683 of 289 U. S., 53 S. Ct. 761, 766); and that "the distinction

to be observed is between the devotion of income to payments which the settlor is bound to make, and to those which he is free to make or not make, as he may see fit" (page 684 of 289 U. S., 53 S. Ct. 761, 766).

The contention here by the Commissioner is that the income of this trust was employed to meet a legal obligation which appellee was bound to make. Whether this was the character of this trust is the determining problem. Before divorce, the legal obligation to provide maintenance for his wife rested upon appellee. Whether that obligation would continue after divorce would depend solely upon the orders of the court granting the divorce. As is not unusual, the parties agreed to a disposition having this situation in view. That disposition was clearly, as revealed in its terms, solely for the purpose of providing an annual income for the wife after divorce. It was not a transfer of title to property to the wife in lieu of what the court might order as alimony. The main practical and economic differences between this arrangement and one for decreed or agreed annual alimony payments by appellee are that it segregated a definite portion of his property to which alone the wife could look for annual income from her former husband and made the amount of income to her largely dependent on the income from his property. The purpose and effect of this arrangement was to provide a substitute for alimony. This effect became a finality when the decree of divorce specifically provided that appellee should "provide and create" the above trust fund and that the wife "have the provision therein made in lieu of all other alimony or interest in the property or estate" of appellee.

The only thing the wife received was income from the trust estate. She received this only because it was "in lieu of all other alimony" or interest. The trust was created for the sole purpose of furnishing such income. Its function was to provide a method of paying alimony. The payment of alimony was ordered and this method prescribed by the court. The payment of alimony in this form was a legal obligation which appellee was bound to meet. This took the form of "income." It was taxable as income. It was taxable (under either opinion in Burnet v. Wells, supra) to appellee because it directly benefited him by discharging a legal obligation he was bound to perform.

The judgment should be reversed and remanded, with instructions to proceed in accord with this opinion.