### HELVERING, Com'r of Internal Revenue, v. BOWEN.

#### No. 4056.

Circuit Court of Appeals, Fourth Circuit.

Oct. 6, 1936.

Howard P. Locke, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Allin H. Pierce, of Washington, D. C. (Choate, Larocque & Mitchell and Dunnington & Gregg, all of New York City, on the brief), for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and MYERS, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition for review of a decision of the United States Board of Tax Appeals involving income tax of the respondent for the year 1929. The decision of the Board was entered October 24, 1935, and is reported in 33 B.T.A. 208. The amount of the tax claimed by the petitioner to be due is $4,492.98.

On August 1, 1929, the taxpayer owned 25 shares of stock of Waterbury Chemical Company. On that date he executed two deeds of trust by each of which he conveyed to City Bank Farmers Trust Company, New York City, as trustee, 12½ shares of the stock.

One of the deeds provided that the trustee should pay to the taxpayer the income for life, and after his death the income and such of the principal as his wife might re-

quest was to be paid to her during her life. Upon death of the survivor, the trustee was directed to pay the remaining principal to her appointee by will, and in default of such appointment to taxpayer's descendants, or, if none, to those persons constituting the heirs of his wife under New York law. The deed further provided that the trustee might apply from time to time to the use of the wife so much of the trust principal as in its discretion it deemed advisable for her care, comfort, or support. It was further provided that except for certain specified items the trustee's determination should be conclusive as to whether any payment received or charge incurred should be treated as income or principal. In paragraph 5 of the deed, petitioner reserved the option to direct the trustee to issue voting proxies for and retain, sell, exchange, invest, reinvest, lease, mortgage, or improve any of the trust property; but subject to the exercise of the option, the trustee had full authority to handle and manage the trust property. In paragraph 6 it was provided that until January 1, 1930, the trust should be irrevocable; but thereafter taxpayer might amend or revoke the agreement or change any beneficial interest thereunder, provided that he should not have power to revest title to trust corpus in himself in any taxable year except upon notice to the trustee during the preceding taxable year; and provided further "that no part of the income of the trust may, in my discretion, be distributed to me or be held or accumulated for future distribution to me"; and still further provided that trust income should not be used to pay premiums on policies of insurance on the taxpayer's life.

The other deed provided for payment of the income to the wife for life, and after her death to taxpayer for life, and after death of the survivor the remaining principal to be paid to certain relatives if living, and otherwise to those persons constituting his heirs under New York law. The other provisions of this second deed were identical with those of the first deed above described, except that in paragraph 6 of the second deed it was specifically provided that taxpayer might revoke at any time after January 1, 1930, with the consent of the beneficiary other than himself entitled to trust income which would be affected by the revocation, and also that trust income might, in taxpayer's discretion, be distributed to him or held or accumulated for future distribution to him with the consent of the beneficiary entitled to trust income which would be affected by such action.

Each deed provided that the trust should take effect upon acceptance by the trustee and be governed by New York law.

The two trusts were accepted by the trustee on August 2, 1929. The certificates of stock were delivered to the trustee and attached to the deeds of trust at the time they were accepted. Both trusts have been continued in force and effect since they were established.

In accordance with the provisions of the trust instruments under which taxpayer reserved the option to direct the trustee to sell trust property, the trustee was directed to sell, and did sell, the stock which it held in trust and retained the proceeds thereof for the uses of the trusts; delivery and payment being made on August 14, 1929.

The taxpayer did not report any profit on the sale in his return for 1929, but the trustee filed a separate return for each trust and reported gain on the sale of the stock. The Commissioner of Internal Revenue refused to determine that any such gain was taxable to the trustee and increased the taxpayer's taxable income by adding thereto the difference between the amount received on the sale and a basic valuation of $150 per share.

The taxpayer petitioned the Board of Tax Appeals for review of the determination of the Commissioner, and on January 21, 1936, an order was entered by the Board substituting the respondent as petitioner in the place of the taxpayer who had died.

Upon review, the Board of Tax Appeals held that the basic valuation should be somewhat increased, and further held that no part of the gain resulting from the sale of the stock was taxable to the taxpayer.

The determination of the Commissioner was based upon the theory that the sale was made by the taxpayer. In the hearing before the Board the additional question was raised on behalf of the Commissioner that the taxpayer was liable under section 167 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 840 (26 U.S.C.A. § 167 note), and this point was argued before the Board without, so far as the record shows, any objection on the part of the taxpayer. It is contended here that the Commissioner should not be allowed to raise a point that was not considered by him in making his original determination, but in view of

the fact that this question was argued before the Board and passed upon by it, we are of the opinion that it may properly be considered here.

The only question presented is whether the gain made on the sale of the stock in question was taxable to the trustee under the trusts or to the taxpayer.

In the briefs and argument before this court the position that the sale was made by the taxpayer was virtually abandoned by attorneys for the petitioner, and their chief reliance was placed upon the point that the gain from the sale of the stock in question was taxable to the grantor of the trusts and not to the trustee by reason of the application of section 167 of the Revenue Act of 1928 (26 U.S.C.A. § 167 note), which reads as follows:

"§ 167. Income for benefit of grantor. Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, or where any part of the income of a trust is or may be applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called 'charitable contribution' deduction), such part of the income of the trust shall be included in computing the net income of the grantor."

■ At the time of the creation of the trusts, negotiations were already under way for the sale of the stock, and the inference is, at least permissible, that the trusts in question were created for the purpose of avoiding the payment of taxes; however, the courts have held that a purpose to minimize or avoid taxation is not unlawful if permissible under a strict construction of a taxing statute.

"'A taxpayer may resort to any legal method available to him to diminish the amount of his tax liability.' Mathews, J., Commissioner v. Eldridge (C.C.A.) 79 F. (2d) 629, 631 [102 A.L.R. 500]. See, too, Bullen v. Wisconsin, 240 U.S. 625, 631, 36 S.Ct. 473, 60 L.Ed. 830; Jones v. Helvering, 63 App.D.C. 204, 71 F.(2d) 214." Sawtell v. Commissioner (C.C.A.) 82 F.(2d) 221, 222.

This principle was also upheld by the Supreme Court in the recent case of General Utilities & Operating Co. v. Helvering, Commissioner of Internal Revenue, 296 U. S. 200, 56 S.Ct. 185, 80 L.Ed. 154.

In the instant case we find that the application of this principle results in the conclusion that the creation of the trusts does not bring them within a strict construction of section 167 of the Revenue Act of 1928. This section was amended by Congress in the Revenue Act of 1932, § 167, c. 209, 47 Stat. 169, 221 (26 U.S.C.A. § 167 and note), and while it is contended on behalf of the petitioner that this amendment was made by Congress for the purpose of clarifying and not changing the law, we do not think the contention is a sound one.

■ This question was recently decided by the Circuit Court of Appeals, First Circuit, in Sawtell v. Commissioner of Internal Revenue, 82 F.(2d) 221, 223, where a trust somewhat similar in character to the one here involved was held not to come within a proper construction of section 167. We agree with the reasoning of the Circuit Court of Appeals in the Sawtell Case where the court said: "We do not see how on any reasonable reading of the language of section 167 it can be held to cover trusts like the present one. No doubt the situation before us is a casus omissus, the amendment of this section in the Revenue Act of 1932 (section 167 [26 U.S.C.A. § 167 and note]) and the committee's reports on the change make that clear, but we do not think that in a tax statute the court has power to extend it by construction to include such cases unless they come within the language used on reasonable interpretation of it. 'The extension of a tax by implication is not favored.' Stone, J., Reinecke v. Gardner, 277 U.S. 239, 244, 48 S.Ct. 472, 474, 72 L.Ed. 866. While the fact that the section was amended so as to include trusts like the one before us is by no means conclusive that it did not include them previously, it does show great doubt on the part of Congress whether the language as it stood did so."

The trusts as created were irrevocable until January 1, 1930, and after that were revocable only upon written notice given by the grantor delivered to the trustee during a preceding taxable year. The sale was not made by the taxpayer but by the trustee, and the conditions of the trusts did not make the profits of sale taxable to the grantor of the trusts under section 167 of the Revenue Act of 1928.

The cases of Greenough v. Commissioner (C.C.A.) 74 F.(2d) 25, and Kaplan et al.

v. Commissioner (C.C.A.) 66 F.(2d) 401, are relied upon on behalf of the petitioner. In both of those cases the grantor in the instruments creating the trust was a trustee and had power over the distribution of the income. They are distinguishable from the instant case and not in point.

The decision of the Board of Tax Appeals is accordingly affirmed.