**COMMISSIONER OF INTERNAL REVE-NUE v. WATERBURY and three other cases.**

**Nos. 294–297.**

Circuit Court of Appeals, Second Circuit. June 6, 1938.

384

James W. Morris, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for petitioner.

Allin H. Pierce, of New York City (Choate, Larocque, Mitchell & Ely and Carter, Ledyard & Milburn, all of New York City, of counsel), for respondents.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

In August, 1929, each of the four respondents executed and delivered to a trustee one or more deeds of trust by which they conveyed to the trustee certain shares of stock of the Waterbury Chemical Co., to be held by the trustee under nine deeds of trust. The date of each deed, and the shares conveyed, are found below.[1]

Each trust instrument is substantially identical except as to the beneficiaries. In substance they provide for the current distribution of the entire income to the named beneficiaries and for the disposition of all principal upon termination of the life estates. No reversionary interest is given to the grantors, nor do they reserve specifically to them any discretionary control in respect of the disposition of income or principal. After January 1, 1930, the trustee has the power to invade the corpus, but it has no such power during the taxable year here in question. The manner of administering the interests of minors are set forth and allow the accumulation of trust income where it is not necessary for support of the minors. The trustee is directed not to amortize premiums paid for trust securities nor take any account of discounts; stock dividends are considered as principal; commissions of the trustee, whether on income or principal, other than termination fees, are a first charge against income; in other respects the trustee's determination is conclusive as to whether any payments received or charges incurred shall be credited to or charged against income or principal. Provision is made that the trustee, at the settlor's option, shall "issue voting proxies for and retain, sell, exchange, invest, reinvest, lease, mortgage or improve any of the trust property held hereunder in such manner as I [the settlor] may direct and without liability to the trustee for resulting loss." Subject to the

| 1 Grantor | Deed Executed | Shares Conveyed | | Reference to separate records |
| | | No. | Par Value | |
| --- | --- | --- | --- | --- |
| Donald N. Waterbury | 8/7/29 | 27 sh. | $100. | (R. 44–49) |
| Whitford N. Waterbury | 8/7/29 | 108 " | 25. | (R. 47–51) |
| " " " | 8/7/29 | 27 " | 100. | (R. 51–56) |
| Charlotte M. Waterbury | 8/9/29 | 162 " | 25. | (R. 46–50) |
| " " " | 8/9/29 | 162 " | 25. | (R. 50–54) |
| Eugene W. Waterbury | 8/12/29 | 108 " | 25. | (R. 49–54) |
| " " " | 8/12/29 | 108 " | 25. | (R. 54–59) |
| " " " | 8/12/29 | 108 " | 25. | (R. 59–64) |
| " " " | 8/12/29 | 27 " | 100. | (R. 69–74) |

above powers of management reserved by the grantors, the trustee has full authority and discretion in managing the trust properties. After January 1, 1930, and not prior thereto (which excludes the taxable year here in question) the grantor may amend or revoke each trust agreement in whole or in part, and change any beneficial interest thereunder, provided that he would not have the power during any taxable year to reinvest in himself title to any part of the corpus of the trust except upon written notice delivered to the trustee during the preceding taxable year.

The trusts took effect upon acceptance by the trustee on August 13, 1929, and certificates of stock, constituting the corpus of the several trusts, were delivered to the trustee at that time.

The Waterbury Chemical Co. was organized and existed since 1898 and manufactured pharmaceutical products. The respondents inherited their stock holdings in this company.

On August 14, 1929, the trustee sold all the shares of stock which constituted the corpus of the several trusts, receiving cash, and retained the same at all times for the uses of the trust. All of the trusts have been continued in force and effect since they were established.

Tax gains were computed on the proceeds of these sales under § 113(a)(3) of the 1928 Revenue Act, 45 Stat. 818, 26 U.S.C.A. § 113 note, and were measured by the excess of the proceeds over bases of the grantors. These gains were reported by the trustee as taxable to it in separate income tax returns, which the trustee filed on behalf of the several trusts for the year 1929.

The Commissioner determined deficiencies against the several respondents on the ground that the stock had not been effectively transferred to the trusts prior to its sale and that they were liable to tax as vendors of their own properties. The Board of Tax Appeals held that the sales were made by the trustee and not the respondents; that the trusts were irrevocable during 1929; that respondents are not liable to a tax under the provisions of § 167 of the Revenue Act of 1928, 26 U.S. C.A. § 167 note; and that the Commissioner erred in including in respondents' taxable income for 1929 the gains realized by the trustee from the sale of this stock. Bowen v. Com'r, 33 B.T.A. 208.

Section 161, 26 U.S.C.A. § 161, provides that trusts shall be taxed at the same rate as individuals and that the tax shall be computed upon the net income of the trust and "shall be paid by the fiduciary, except as provided in § 166 (relating to revocable trusts) and § 167 (relating to income for benefit of the grantor)." Section 162, 26 U.S.C.A. § 162, provides that "the net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that * * * (b) there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not." Section 166, 26 U.S.C.A. § 166 note, deals with revocable trusts. Section 167, 26 U.S.C.A. § 167 note, provides as follows: "Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him * * * such part of the income of the trust shall be included in computing the net income of the grantor."

The sole question presented on this appeal relates to the applicability of § 167. There is no claim that any of the trusts were revocable within the taxable year involved so as to impose liability on the respondents under the provisions of § 166; nor is there a claim of liability on the respondents as fiduciaries (§ 161) or as beneficiaries (§ 162[b]).

The basic plan of the income tax statute treats the trust as a separate taxable entity, and provides that the tax on the net income of property held in trust shall be paid by the fiduciary. Section 167 is an exception to that scheme. Sawtell v. Com'r, 1 Cir., 82 F.2d 221. The phrase "in the discretion of the grantor of the trust" we have held to be "expressly limited to situations where the distribution or accumulation may be for the benefit of the grantor or not as he alone or in conjunction with any one not a beneficiary may in his discretion determine." Com'r v. Morris, 2 Cir., 90 F.2d 962, 964. If the distribu-

tion to the grantor or the accumulation for future distribution to him occurs without the existence of any discretionary control by the grantor, § 167 does not apply. Sawtell v. Com'r, supra; Helvering v. Bowen, 4 Cir., 85 F.2d 926; Com'r v. Morris, supra.

 Here there is no express reservation of discretionary power to the grantors to divert income from their designated beneficiaries. The instruments provide for current distribution of the entire income to the named beneficiaries. In the case of minor beneficiaries, there is authority conferred for the accumulation of income but that authority rests in the discretion of the trustee, not the grantors. These are the only provisions of the trust instruments which expressly deal with the disposition of income. No occasion exists therefore for the application of the provisions of § 167 and the trust income is subject to taxation under the usual provisions of the statute. (§§ 161, 162.) A power reserved to a grantor, it has been held, must be by express words of reservation in an inter vivos trust. Higgins v. White, 1 Cir., 93 F.2d 357.

 The petitioners argue that the grantors reserved to themselves the essential discretionary control, contending that under para. 4 of the trust deed the trustee had discretion to classify capital gains either as to principal or income and that by para. 5 the grantors could direct the trustee to retain any of the trust property including capital gains; that by para. 6 the grantors might have power to acquire the accumulated capital gains by revocation in a future year. However, the argument is not valid since para. 4 gives discretion to the trustee and not to the grantors. Moreover, it relates only to the classification of receipts and not to the disposition of income which is controlled by para. 1. It makes no specific reference to capital gains and its general terms are insufficient to give the trustee any such discretion as is referred to in § 167. In New York, capital gains derived from sales of trust assets are added to the corpus unless the settlor has by unmistakable language directed otherwise. Matter of Hagen's Will, 262 N.Y. 301, 305, 186 N.E. 792; Matter of Gerry, 103 N.Y. 445, 449, 9 N.E. 235.

 This trust property was sold on the day following the creation of the trusts and the gains are measured with reference to the basis of the stock in the hands of the prior owners, some thirteen or more years before the trusts were created. Such tax gains are to be computed under § 113(a) (3). Under para. 4 the tax gains involved became the corpus of the trust by general rule of law and they were not subject to discretionary control of any one. The provisions of para. 5 relate to the management of the trust corpus and not to the disposition of trust income. Reserve powers of management do not invest the grantor with any control over the economic benefits or enjoyment of the trust property and this paragraph would not make applicable section 167. Compare: Reinecke v. Northern Trust Co., 278 U.S. 339, 346, 49 S.Ct. 123, 125, 73 L.Ed. 410, 66 A.L.R. 397.

Moreover, it is not clear it was intended that the grantors could require the trustee to earmark capital gains and retain them separate from any other part of the trust estate. The power to revoke the trust does not constitute discretionary control over disposition of the income within the meaning of § 167. Revocable trusts are taxed pursuant to § 166, which the petitioner admits is not applicable here.

It is erroneous to assume that because the grantors could acquire the trust property through the exercise of the powers of revocation in future years any income presently retained by the trustee could be taxed under § 167. At all times during 1929 the taxable gains were not the property of the respondents but were the property of the trust.

There was no implied reservation in the grantor of discretionary control over this trust income and since there was neither express nor implied reservation of discretionary control in the grantors over disposition of trust income, it follows that § 167 is not applicable.

It is said that Rollins v. Helvering, 8 Cir., 92 F.2d 390, is contrary to these views. In that case each of the trust instruments contained provisions which are not present here. It was provided there that the trustee might from time to time apply to the use of the grantor and his descendants so much of the principal of the trust as in its discretion it might deem advisable for their care and education. The right was reserved to the grantor at any time to require the resignation of a trustee and to appoint a successor. It is clear from the opinion that these were the controlling factors in that decision and § 167 was held applicable.

Decisions affirmed.